## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**RIVER HEALTHCARE, INC.**
**D/B/A PRIME OCCUPATIONAL**
**MEDICINE, LLC**

**CIVIL ACTION**

**VERSUS**

**NO. 22-135-JWD-SDJ**

**BAYLOR MIRACA GENETICS**
**LABORATORIES, LLC**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Vacate Preliminary Default and to Dismiss* (the "*Motion*") (Doc. 2) filed by Defendant Baylor Miraca Genetics Laboratories, LLC ("Baylor Genetics" or "Defendant"). Plaintiff River Healthcare, Inc. d/b/a[1] Prime Occupational Medicine, LLC ("River Healthcare" or "Plaintiff") opposes the *Motion*. (Doc. 4.) Defendant has filed a reply. (Doc. 5.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is granted in part and denied in part.

Specifically, with respect to Defendant's request to vacate the preliminary default judgment entered by the Nineteenth Judicial District Court of East Baton Rouge Parish, the *Motion* is granted for being unopposed. As such, the preliminary default judgment entered by the state court against Defendant is hereby vacated. With respect to Defendant's request for dismissal for insufficient service of process and lack of personal jurisdiction under Federal Rules of Civil

---

[1] The original named plaintiff in state court was Prime Lakeside Occupational Medicine, LLC. (*Petition*, Doc. 1-2 at 3.) However, in its First Supplemental and Amending Petition, Plaintiff substituted Prime Lakeside Occupational Medicine, LLC for River Healthcare, Inc. d/b/a Prime Occupational Medicine, LLC throughout the entire original Petition, including the caption. (*Am. Petition*, ¶ I, Doc. 1-3.) Accordingly, the Court will refer to Plaintiff as "River Healthcare" throughout this ruling.

Procedure 12(b)(5) and 12(b)(2), the *Motion* is denied. With respect to Defendant's request for dismissal based on improper venue under Federal Rule of Civil Procedure 12(b)(3), the *Motion* is denied. However, for reasons set forth below, the Court will transfer this case *sua sponte* to the United States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1404(a) and in accordance with the parties' binding forum-selection clause. Finally, with respect to Defendant's request for dismissal under Federal Rule of Civil Procedure 12(b)(6), the *Motion* is denied as moot.

## I.    Relevant Factual Background

This case arises out of a contractual dispute between Plaintiff and Defendant. Defendant was in the business of providing medical support and COVID-19 PCR testing[2] to different entities in Louisiana. (*Petition*, ¶ 2, Doc. 1-2.) According to the Petition, on or about January 9, 2021, Plaintiff entered into an agreement with Defendant to provide these types of service at Louisiana State University ("LSU") in Baton Rouge, Louisiana. (*Id.* ¶ 3.) Defendant is a Texas Limited Liability Company domiciled in and having its principal place of business in Harris County, Texas. (*Id.* ¶ 1.)

Pursuant to the agreement, Defendant was to provide Plaintiff with "secure testing facility indoors or outdoors with necessary protection from sun, wind and rain; provide a roster of employees to be tested; provide shipping or courier services to deliver samples to lab; and provide necessary computers and printers to produce lab requisition forms." (*Id.* ¶ 4.) The minimum billing was "to be for 40 samples per day at the main test site plus 10 samples per day with each additional

---

[2] PCR refers to a "polymerase chain reaction." *COVID-19 and PCR Testing*, CLEVELAND CLINIC, ps://my.clevelandclinic.org/health/diagnostics/21462-covid-19-and-pcr-testing (last visited – March 16, 2023). A COVID-19 PCR test is "a molecular test that analyzes your upper respiratory specimen, looking for genetic material (ribonucleic acid or RNA) of SARS-CoV-2, the virus that causes COVID-19." *Id.* "The PCR test has been the gold standard test for diagnosing COVID-19 since authorized for use in February 2020." *Id.*

test site, between 4–7 sites, that is added at $20.00 per test, with invoices to be paid within 30 days." (*Id.*) It was promised that 8,000 tests would be performed per week. (*Id.* ¶ 5.) Additionally, the agreement provided for PCR testing of water sources in the dormitories. (*Id.* ¶ 6.) If a positive water test was received, all individuals living in the dormitory that received the positive water test would be required to be tested. (*Id.* ¶ 6.) This was estimated to result in 8,000 tests each time water testing was performed. (*Id.*) The agreement was for a term of one year from the date of execution. (*Id.* ¶ 7.)

Plaintiff alleges that it set up tents, printers, COVID-19 testing sites, and personnel to conduct testing, and that it carried out this work for approximately two weeks. (*Id.* ¶ 8.) It is further alleged that Defendant terminated the agreement without cause and made no payment to Plaintiff for the submitted invoices and completed testing, which Plaintiff claims amounted to over $25,000. (*Id.* ¶ 9.) Plaintiff claims that it took on these expenses relying on Defendant's promise that Plaintiff would be the company to carry out the testing for at least one year; thus, Plaintiff seeks to recover, *inter alia*, past and future lost revenue. (*Id.* ¶¶ 10–11.)

## II.    Procedural History

Plaintiff originally filed its breach of contract claims against Defendant in the Nineteenth Judicial District Court of East Baton Rouge Parish, Louisiana on July 22, 2021. (*See Petition*, Doc. 1-2.) Plaintiff sought to serve Defendant "via [the] long-arm statute . . . through its agent for service of process," the "Texas Secretary of State." (*Id.* at 5.) On October 27, 2021, Plaintiff filed a motion for a preliminary default judgment against Defendant; on November 4, 2021, the state court entered a preliminary default judgment against Defendant.[3] (Doc. 1-4 at 2.) On January 27, 2022,

---

[3] It should be noted that Louisiana Code of Civil Procedure article 1701 has been repealed, effective January 1, 2022. The concept of preliminary default has been eliminated in Louisiana. *See* Scott L. Sternberg, *Effective Jan. 1, 2022: Act 174 Addresses New Default Laws*, 69 LOUISIANA BAR JOURNAL 4 (2021). The new law makes various changes to

Plaintiff moved for a hearing date to confirm the default judgment. (*See* Doc. 1-5.) On February 24, 2022, Defendant filed declinatory exceptions of improper venue and insufficient service of process. (*See* Doc. 1-8.) Defendant then removed the case to this Court, pursuant to diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446, on February 25, 2022. (*See* Doc. 1.)

## III.    Discussion

### A.   Parties' Arguments

#### 1.   Defendant's Memorandum in Support (Doc. 2-6)

Defendant's *Motion* asks the Court to do two things: (1) vacate the preliminary default Plaintiff obtained in state court; and (2) dismiss this action without prejudice under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(5), and 12(b)(6). (Doc. 2-6 at 4.) As to the first point, Defendant summarizes jurisprudence laying out factors for the Court to consider when deciding whether to vacate an entry of default by a state court. (*Id.* at 5 (citing *Macro Companies, Inc. v. Dearybury Oil & Gas, Inc.*, No. 18-1145, 2018 WL 4955869, at *2 (W.D. La. Oct. 10, 2018)).) Defendant argues that an application of those factors here strongly favors vacatur. (*Id.* at 5–7.)

As for dismissal, Defendant first argues that the Court should dismiss this action for improper venue, pursuant to a forum-selection clause ("FSC")[4] included in the agreement between the parties. (*Id.* at 7.) Defendant contends that the FSC is presumptively valid and binding. (*Id.*)

---

default laws in Louisiana; among other things, the new law updates the terminology of default laws in Louisiana, requires certified mail notice if an attorney has informally reached out to counsel, and eliminates completely the concept of "preliminary default" and "confirmation of preliminary default" from the Code of Civil Procedure. *Id.* Pursuant to the recent change, a plaintiff now must provide the defendant with notice that the plaintiff intends to obtain a default judgment. La. Code Civ. Proc. art. 1701A(1). However, the changes identified in Act 174 do not affect this case, as the Louisiana Legislature made clear that the changes became effective on January 1, 2022, and "shall apply to default judgments rendered on or after that date." DEFAULT JUDGMENTS, 2021 La. Sess. Law Serv. Act 174 (H.B. 164) (WEST). As previously stated, here, the preliminary default judgment was entered against Defendant on November 4, 2021. (Doc. 1-4 at 2.)

[4] The FSC here mandates that "[v]enue for any case or controversy hereunder shall be the court of appropriate jurisdiction in Harris County, Texas." (Doc. 2-1 at 5.)

Moreover, Defendant maintains that the "broad, mandatory language" of the FSC "encompasses [Plaintiff's] claim, whether sounding in contract or tort." (*Id.* (citations omitted).) This is because:

> [Plaintiff's] alleged damages arise from two purported acts that are inextricably linked to the Agreement: (i) [Defendant's] termination of the Agreement "[w]ithout cause," and (ii) [Defendant's] nonpayment of invoices under the Agreement. [(Doc. 2-2, ¶ 9.)] As a result, [Defendant] is entitled to enforce the binding forum-selection clause against [Plaintiff] with respect to the claim and allegations set forth in the Petition.

(*Id.* at 8.) Further, Defendant avers that Plaintiff cannot "meet its 'heavy burden' of resisting enforcement of the Agreement's valid [FSC]." (*Id.*) According to Defendant, a FSC is potentially unreasonable if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

(*Id.* (quoting *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)).) Defendant contends that Plaintiff cannot show that any of these reasons apply here. (*Id.* at 9–11.)

Defendant next argues that the action should be dismissed for insufficient service of process and lack of personal jurisdiction. (*Id.* at 11.) According to Defendant, Plaintiff failed to comply with the Louisiana long-arm statute in two ways: (1) Plaintiff did not send Defendant a certified copy of the citation and petition by registered or certified mail, nor is there any evidence that Plaintiff delivered those documents to Defendant by commercial courier; and (2) Plaintiff did not attempt service on the correct party, because Defendant appointed Registered Agents, Inc. as its agent for service of process, and Plaintiff instead served the Texas Secretary of State. (*Id.* at 12–13.) Accordingly, Defendant asks the Court to dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(5). (*Id.* at 13.) And, Defendant argues, "because '[p]roper

service of process is an essential part of the procedure for establishing and proving personal jurisdiction,' " Defendant asserts that dismissal under Federal Rule of Civil Procedure 12(b)(2) is also warranted. (*Id.* (quoting *Booker v. Reyes*, No. 20-634, 2021 WL 3173581, at *5 (M.D. La. July 26, 2021)).)

Finally, Defendant asserts that the claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a plausible claim. (*Id.*) In Defendant's view, Plaintiff's Petition "does not offer any theory—contract, tort, equity, or otherwise—as to why Baylor Genetics is liable for 'past and future lost revenue, as well as other damages.' " (*Id.* at 13–14 (quoting *Petition*, ¶ 11, Doc. 1-2).)

### 2.  Plaintiff's Opposition (Doc. 4)

Plaintiff concedes that the preliminary default should be vacated but argues that it properly served Defendant. (Doc. 4 at 1.) Plaintiff states that proof of proper service is evidenced by "a copy of the correspondence and related pleadings sent via Long Arm Statute with the United States Mail return receipt (PS Form 3811) evidencing receipt of Plaintiff's Petition . . . and First Supplemental and Amending Petition, in accordance with La. R.S. 13:3204, et seq. by Johan Talor of Registered Agents, Inc., Defendant's registered agent in Texas[,]" (*id.* at 1–2), all of which is attached to Plaintiff's opposition brief, (*see* Doc. 4-1).

With respect to Defendant's request for dismissal under Federal Rule of Civil Procedure 12(b)(6), Plaintiff "strenuously disputes Defendant's claims regarding the alleged lack of factual support and failure to state a plausible claim for relief." (Doc. 4 at 2.) Plaintiff argues that it "provides specific, particular factual allegations sufficient to meet the heightened pleading standard pursuant to Fed. R. Civ. P. 12 (b)(6)." (*Id.* at 3.) "For example, there are factual allegations specifying when the alleged conduct occurred, the details of the conduct and how [Defendant] was

6

involved in the same." (*Id.* at 3–4.) Plaintiff then lays out the factual allegations made in the

Petition and explains why they are sufficient to state a plausible claim for relief. (*Id.* at 4–5.)

Next, Plaintiff contends that the FSC is not enforceable. (*See id.* at 5.) It is Plaintiff's view

that enforcement of the FSC will "deprive [Plaintiff] of its day in court because of grave

inconvenience and unfairness." (*Id.*) According to Plaintiff, all the claims under the parties'

contract (negligence, unjust enrichment, and detrimental reliance) occurred in Baton Rouge,

Louisiana. (*Id.*) Moreover, the agreement was digitally signed, all communications between the

parties occurred via email, and there is no evidence that Plaintiff ever went to Harris County, Texas

or that the agreement was signed in Harris County. (*Id.* at 6.) Additionally, Plaintiff argues that the

most important witnesses will be representatives of LSU, all of whom are located in Baton Rouge,

Louisiana. (*Id.* at 7.)

Plaintiff also argues that the FSC is unenforceable because it "would contravene a strong

public policy of the forum state." (*Id.*) Plaintiff claims that this argument is supported by Louisiana

Revised Statutes 23:921(A)(2), which provides:

> The provisions of every employment contract or agreement, or provisions thereof,
> by which any foreign or domestic employer or any other person or entity includes
> a choice of forum clause or choice of law clause in an employee's contract of
> employment or collective bargaining agreement, or attempts to enforce either a
> choice of forum clause or choice of law clause in any civil action involving an
> employee, shall be null and void.

(*Id.* at 7–8 (quoting La. R.S. § 23:921(A)(2)).)

Plaintiff summarizes the public policy concerns as follows:

> [Defendant] entered into a contract to test for Covid-19 on Louisiana State
> University's campus in Baton Rouge, Louisiana. [Defendant] was paid for these
> tests by Louisiana State University. [Defendant] enticed [Plaintiff] into this contract
> based off of LSU's wishes to perform 8,000 tests a week. Louisiana has strong
> public policy to protect its college campuses, its student and faculty tested, and
> keeping its resources in Baton Rouge, Louisiana. [sic throughout]

(*Id.* at 8.)

Lastly, Plaintiff argues that even if the Court finds that the FSC is enforceable, the appropriate remedy is transfer of the case to the proper venue, not dismissal. (*Id.* at 2 (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013)).)

### 3. Defendant's Reply (Doc. 5)

Defendant first notes that Plaintiff agrees the preliminary default entered by the state court should be vacated. (Doc. 5 at 2 (quoting Doc. 4 at 1).) On this basis, Defendant contends that the Court should grant the *Motion* in this respect and vacate the preliminary default. (Doc. 5 at 2.)

Next, Defendant claims that Plaintiff's arguments against dismissal under Federal Rule of Civil Procedure 12(b)(6) are unpersuasive. (*Id.*) Defendant asserts, *inter alia*, that Plaintiff failed to "name—much less allege facts satisfying the elements of—the claims that [Plaintiff] now argues it asserts: breach of contract, negligence, unjust enrichment, and detrimental reliance." (*Id.* at 3.) Moreover, Defendant notes that Plaintiff has also failed to identify which state law governs these claims. (*Id.*) Defendant concludes by characterizing Plaintiff's Petition as "a paradigmatic example of a barebones complaint that fails to meet federal pleading standards." (*Id.* at 4.)

Defendant then reiterates its arguments for dismissal based on insufficient service of process. "[Defendant] challenged service of process under Rule 12(b)(5) because: (1) it received a copy (not service) of the Petition in February 2022, seven months after [Plaintiff] filed suit, from a state-court clerk (not [Plaintiff]) at [Defendant's] request; and (2) the state-court record lacked proof of service, suggesting that [Plaintiff] had indeed failed to effect service of process." (*Id.*)

Regarding Plaintiff's contention that it sent the pleadings to Defendant's registered agent for service of process—Registered Agents, Inc.—Defendant alleges several deficiencies. First, Defendant contends that under the Louisiana long-arm statute, process must be "sent *to the*

8

*defendant*." (*Id.* at 5 (quoting La. R.S. § 13:3204(A)) (emphasis in original).) Defendant claims

that the attachment Plaintiff relies on for proof of service omitted a corresponding declaration that

testified as to what documents Plaintiff allegedly sent; moreover, Defendant argues that although

Registered Agents, Inc. is Defendant's registered agent, the envelope was addressed solely to

Registered Agents, Inc., without any mention of Defendant. (*Id.* (citing Doc. 4-1 at 1).) In addition,

Defendant points out that the cover letter is addressed only to Registered Agents, Inc., and not to

Defendant. (*Id.*) Further, "[c]ompounding this deficiency, the cover letter contains a generic

greeting ('To Whom it May Concern') and asserts that 'you'—ostensibly Registered Agents, Inc.,

the addressee—'have been made a party defendant' to the instant suit." (*Id.* at 6.) Defendant claims

to never have received this process and further asserts that Plaintiff has failed to cite any authority

"establishing that a plaintiff may satisfy La. R.S. 13:3204(A) by generically mailing process to a

defendant's registered agent without directing the agent's attention to its principal (the

defendant)." (*Id.*)

Lastly, on this point, Defendant argues that Plaintiff has not established that a citation was

mailed to Defendant's registered agent, which is required by Louisiana Revised Statutes

13:3204(A); according to Defendant, although the attachment contains a citation, Plaintiff's cover

letter indicates that only the Petition and First Supplemental and Amending Petition were enclosed.

(*Id.*) Accordingly, Defendant maintains that the Court should dismiss this case pursuant to Federal

Rules of Civil Procedure 12(b)(2) and 12(b)(5).

Finally, Defendant argues that Plaintiff failed to meet its burden in establishing that the

FSC should not be enforced. (*Id.* at 6.) Defendant urges that Plaintiff "produced no evidence—no

declarations, no exhibits, nothing—to satisfy its 'heavy burden[,]' " but "instead relies exclusively

on unsubstantiated attorney argument[,]" which is insufficient to overcome Plaintiff's heavy

burden of proving the FSC is unenforceable. (*Id.* at 7 (citing *Two Rivers Pipeline & Constr. Co., Inc. v. Cimarex Energy Co.*, No. 19-049, 2020 WL 6379242, at \*10 (W.D. Tex. Sept. 27, 2020)).) Moreover, Defendant claims that regardless of Plaintiff's "failure to marshal evidence, [its] arguments are simply unavailing." (*Id.*; *see also id.* at 7–9 (setting forth reasons why Defendant contends Plaintiff's arguments on the FSC fail).)

Although Defendant argued that this case should be dismissed on the basis of improper venue pursuant to the FSC in its original memorandum supporting its *Motion*, (Doc. 2-6 at 7), Defendant now acknowledges in its reply brief "that transfer is the appropriate relief when, as here, a plaintiff ignores a binding forum-selection clause and files suit in a different forum[,]" (Doc. 5 at 9 (citing *Boatner v. MXD Grp. Inc.*, No. 16-597, 2017 WL 3977997, at \*2 (M.D. La. Sept. 11, 2017)).) Thus, Defendant concludes: "Should the Court decline to dismiss this action under Rules 12(b)(2), 12(b)(5), and 12(b)(6), [Defendant] respectfully requests that the Court transfer this case to the Southern District of Texas pursuant to the parties' Agreement." (*Id.* at 9–10 (citations omitted).)

### B. Applicable Law and Analysis

Because the issues presented in the instant *Motion* involve procedural matters, federal law governs. 14C Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 3738 (4th ed.) ("Thus, it has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters."); *see also Paddock v. Thurber*, No. 13-810, 2015 WL 6478936, at \*3 (M.D. La. Oct. 27, 2015) (Dick, C.J.).

### 1. Whether the Preliminary Default Judgment Entered in State Court Should be Vacated

10

The Court will first determine whether the state court's preliminary default judgment should be vacated. As explained above, here, Plaintiff obtained a preliminary default judgment in state court prior to the case's removal.

In federal court, "[a] party is entitled to the entry of default by the clerk of court if the opposing party fails to plead or otherwise defend as required by law." *Macro Companies, Inc. v. Dearybury Oil & Gas, Inc.*, No. 18-1145, 2018 WL 4955869, at *2 (W.D. La. Oct. 10, 2018) (citations omitted). "This first step, entry of a default, is a ministerial matter performed by the clerk, and is a prerequisite to a later default judgment." *Id.* At the time Plaintiff obtained the preliminary default in this case, Louisiana state law made an order of preliminary default "a prerequisite to the confirmation of a judgment of default." *Id.* Thus, for our purposes here, a preliminary default judgment obtained in state court "is the equivalent of an entry of default by a federal court[.]" *Villarrubia v. Encompass Indem. Co.*, No. 10-734, 2010 WL 1978883, at *2 (E.D. La. May 14, 2010).

"Our jurisprudence has made clear that the federal rules apply after removal and 'neither add to nor abrogate what has been done in the state court prior to removal.' " *Rushe v. NMTC, Inc.*, No. 01-3440, 2002 WL 575706, at *3 (E.D. La. Apr. 16, 2002) (quoting *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963) (quoting *Talley v. Am. Bakeries Co.*, 15 F.R.D. 391, 392 (E.D. Tenn. 1954))). "The federal court takes the case as it finds it on removal and treats everything that occurred in the state court as if it had taken place in federal court." *Id.* (quoting *Butner*, 324 F.2d at 785 (citing *Savell v. Southern Ry.*, 93 F.2d 377, 379 (5th Cir. 1937)))); *see also Murray v. Ford Motor Co.*, 770 F.2d 461, 464 (5th Cir. 1985) (citation omitted). "However, a motion to set aside the default may be asserted once the matter has been removed to federal court." *Rushe*, 2002 WL 575706, at *3.

Under Federal Rule of Civil Procedure 55(c), a "court may set aside an entry of default for good cause[.]"[5] Fed. R. Civ. P. 55(c). "The factors to be considered in making a Rule 55(c) determination include: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and, (3) whether a meritorious defense is presented." *Rushe*, 2002 WL 575706, at *3 (citing *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992)). "These factors are neither talismanic nor exclusive, and other factors may be considered[.]" *Macro Companies*, 2018 WL 4955869, at *2 (citing *CJC Holdings*, 979 F.2d at 64 (5th Cir. 1992); *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992)).

Further, "[i]n reviewing a decision to set aside a default, the Fifth Circuit noted that 'courts "universally favor trial on the merits," and that the decisions to set aside a default [are] committed to the sound discretion of the trial court, a discretion that obviously is not unlimited[.]' " *Lee v. Ctr. for Psychological Health Care, Inc.*, No. 12-27, 2012 WL 2931258, at *2 (M.D. La. July 17, 2012) (Fallon, J.) (quoting *Dierschke*, 975 F.2d at 183 (quoting *Bridoux v. Eastern Air Lines, Inc.*, 214 F.2d 207, 210 (D.C. Cir. 1954) (internal quotation marks omitted))).

As noted above, Plaintiff "does not dispute the Motion to Vacate Preliminary Default" filed by Defendant. (Doc. 4 at 1.) Because Plaintiff concedes that the preliminary default obtained in state court should be vacated, the Court need not find that Defendant has shown good cause pursuant to Fed. R. Civ P. 55(c) to set side the preliminary default obtained here. Therefore, Defendant's *Motion*, as it pertains to vacating the preliminary default, will be granted for being unopposed. Accordingly, the preliminary default judgment entered by the Nineteenth Judicial District Court of East Baton Rouge Parish against Defendant is hereby vacated.

---

[5] Rule 55(c) further provides that a court "may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). However, Plaintiff only secured a preliminary default judgment in state court, not a final default judgment. Thus, Rule 60(b) does not apply. Fed. R. Civ. P. 60(b).

### 2. Sufficiency of Service of Process

"Under Rule 4, a plaintiff is responsible for serving the defendant with a copy of the complaint and a summons." *Johnson v. Courtesy Auto. Grp.*, No. 20-103, 2021 WL 1230490, at *8 (M.D. La. Mar. 8, 2021), *report and recommendation adopted*, No. 20-103, 2021 WL 1227869 (M.D. La. Mar. 31, 2021) (citing Fed. R. Civ. P. 4(c)(1)). "The Rule further provides that a court must either dismiss the action against a defendant without prejudice, or order that service be made within a specified time, if the defendant is not served within 90 days after the complaint is filed." *Id.* (citing Fed. R. Civ. P. 4(m)).

A party may move to dismiss a case for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "A motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process." *Holly v. Metro. Transit Auth.*, 213 F. App'x 343, 344 (5th Cir. 2007). "The party making service has the burden of demonstrating its validity when an objection to service is made." *Id.* (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). "When a challenge is made to the adequacy of service of process, the serving party bears the burden of proving the validity of service or the existence of good cause for failing to effect service in a timely manner." *Ceasar v. Louisiana Bd. of Ethics*, No. 17-562, 2018 WL 2090184, at *4 (M.D. La. May 4, 2018) (Dick, C.J.) (citations omitted). The district court has broad discretion in determining whether to dismiss an action for ineffective service of process. *George v. U.S. Dep't of Labor, Occupational Safety & Health Admin.*, 788 F.2d 1115, 1116 (5th Cir. 1986).

"In order for the Court to resolve the question of sufficiency of process, it must '[look] to the state law governing process.' " *Stephens v. Carter*, No. 15-521, 2016 WL 7104851, at *2 (M.D. La. Dec. 5, 2016) (Dick, C.J.) (citing *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1287 (11th Cir. 1985)); *see also Rentz v. Swift Transportation Co., Inc.*, 185 F.R.D.

693, 696 (M.D. Ga. 1998) ("In actions removed from state court, the sufficiency of service of process prior to removal is determined by the law of the state from which the action was removed."). Accordingly, the Court must determine whether Plaintiff's service of process on Defendant complied with Louisiana law governing service of process.

Defendant is a non-resident, and Plaintiff's cause of action arises from Defendant contracting to supply services or things in Louisiana. Thus, the Louisiana long-arm statute applies to this suit. *See* La. R.S. § 13:3201(A). Section 3204(A) of Louisiana's long-arm statute sets forth the requirements for service of process on non-residents. La. R.S. § 13:3204(A). That provision provides in pertinent part:

> In a suit under R.S. 13:3201, a certified copy of the citation . . . and of the petition . . . or other pleading filed by the plaintiff in a summary proceeding under Code of Civil Procedure Article 2592 shall be sent by counsel for the plaintiff, or by the plaintiff if not represented by counsel, to the defendant *by registered or certified mail*, or *actually delivered* to the defendant *by commercial courier*, when the person to be served is located outside of this state or *by an individual designated by the court in which the suit is filed*, or *by one authorized by the law of the place where the service is made to serve the process* of any of its courts of general, limited, or small claims jurisdiction.

La. R.S. § 13:3204(A) (emphasis added).

In order to satisfy the plain language of La. R.S. § 13:3204(A), Plaintiff must have served Defendant by registered or certified mail or through a commercial courier. Defendant argues that the purported service did not comply with the Louisiana long-arm statute because it was not "sent *to the defendant*." (Doc. 5 at 5 (quoting La. R.S. § 13:3204(A)) (emphasis in original).) The Court finds this argument to be without merit.

In *Stepehens v. Carter*, the parties disputed whether the plaintiff had properly effectuated service of process through compliance with Section 3204 of the Louisiana long-arm statute. 2016 WL 7104851, at *2 (citing La. R.S. § 13:3204(A)). More specifically, the defendants argued that

14

one of the defendants who was a non-resident, ASC, was not properly served in compliance with La. R.S. § 13:3204(A). *Id.* Prior to that case being removed, the plaintiff had mailed a certified copy of its petition filed in state court and a certified copy of the citation from the state court "to ASC through its registered agent for services of process[.]" *Id.* at *1. ASC argued that the plaintiff had not satisfied the Louisiana long-arm statute because "ASC was not actually served process, there [was] a dispute as to ASC's address, and [the] [p]laintiff only served one of the addresses without any attempt to serve the second address." *Id.* at *2. The Court disagreed with ASC and found that the plaintiff had complied with the requirements of the Louisiana long-arm statute by mailing the required documents to the address of ASC's registered agent for service of process in Illinois. *Id.* at *4.

The Court finds *Stepehens v. Carter* instructive on the issue of whether service of process was sufficient in this case. 2016 WL 7104851. Here, like in *Stephens*, the documents in the record show that a certified copy of the Petition that was filed in state court and the citation was sent by certified mail to Defendant's registered agent for service of process, Registered Agents, Inc. (*See* Doc. 4-1.) That correspondence also included a certified copy of the First Supplemental and Amending Petition that Plaintiff filed in state court. (*Id.* at 1, 6, 7.)

Defendant points out that the envelope containing the legal process was addressed only to Defendant's registered agent and that the cover letter is similarly only addressed to Defendant's registered agent. (Doc. 5 at 5.) Defendant further argues that the cover letter made it unclear that Defendant was the party being served because "the cover letter contains a generic greeting ('To Whom it May Concern') and asserts that 'you'—ostensibly Registered Agents, Inc., the addressee—'have been made a party defendant' to the instant suit." (*Id.* at 6.) However, the cover letter's subject line clearly sets out the case caption, which includes the name of Defendant, the

suit number of the case, and the court in which the action was commenced. (*See* Doc. 4-1 at 1.) Moreover, the attached citation and Petition include Defendant as a party. (*See id.* at 2–3.) Defendant cites no authority other than La. R.S. § 13:3204(A) for its proposition that service must be made directly "to the defendant," and the contents sent by certified mail to Defendant's registered agent for service of process clearly indicate that Defendant is the party being served. Therefore, the Court finds that Plaintiff's mailing to the address of Registered Agents, Inc. fulfills the requirements of the Louisiana long-arm statute.

Defendant additionally argues that service of process was insufficient because it "never received this purported process, which was addressed only to its agent and not Baylor Genetics." (Doc. 5 at 6.) However, this purported fact is irrelevant: "Louisiana state courts and federal district courts within the Fifth Circuit have held that proof of actual receipt of service of process is not necessary to perfect service under the Louisiana Long Arm Statute." *Trimble v. Strength*, No. 20-355, 2022 WL 636729, at *3 (M.D. La. Jan. 25, 2022) (deGravelles, J.) (citing *McFarland v. Dippel*, 99-0584 (La. App. 1st Cir. 3/31/00), 756 So. 2d 618, 622, *writ denied*, 2000-1794 (La. 9/29/00) 770 So. 2d 349; *Thomas Organ Co. v. Universal Music Co.*, 261 So. 2d 323, 327 (La. App. 1st Cir. 1972); *Hamilton v. Alvarado-Cruz*, No. 08-653, 2009 WL 2175995, at *3 (M.D. La. July 21, 2009); *Stogner v. Neilson & Hiebert Sys., Inc.*, No. 07-4058, 2008 WL 4587304, at *2–3 (E.D. La. Oct. 15, 2008); *United States v. LaBorde*, No. 20-1087, 2021 WL 1151543, at *2 (W.D. La. Mar. 25, 2021)). Thus, this contention also lacks merit.

Lastly, Defendant argues that "[t]he attachment contains a citation, . . . but [Plaintiff]'s cover letter says that only the Petition and Supplemental Petition were enclosed therein . . . . [a]nd [Plaintiff] did not submit a declaration or other evidence to show that it timely served Baylor Genetics with a *citation*." (Doc. 5 at 6 (emphasis added).) Although Louisiana Revised Statutes

16

13:3204(A) does require both a citation and petition to be sent to the defendant, the legal process mailed to Registered Agents, Inc. appears to include both of these documents. Despite the cover letter failing to indicate that a citation was enclosed, the citation attached provides: "Attached to this citation is a certified copy of the petition." (Doc. 4-1 at 2; *see also id.* at 6 (the citation for the First Supplemental and Amending Petition, which was prepared four days later, providing same).)

Defendant has failed to point the Court to any authority that the language of the cover letter detailing the contents of the service of process documents should prevail over the documents provided by Plaintiff that evidence proof of service. As Defendant correctly points out, Plaintiff, as the party making service, has the burden of demonstrating its validity when an objection to service is made. (Doc. 5 at 4–5 (citing *Fetty v. La. State Bd. of Private Sec. Exam'rs*, --- F. Supp. 3d ---, No. 18-517, 2020 WL 520026, at *5 (M.D. La. Jan. 31, 2020) (deGravelles, J.)).) *See also Holly*, 213 F. App'x at 344 (citing *Carimi*, 959 F.2d at 1346). The Court concludes that Plaintiff has satisfied this burden by attaching proof of service to its opposition brief. (*See* Doc. 4-1.) Therefore, the Court finds that Plaintiff's mailing to the address of Registered Agents, Inc. fulfills the requirements of the Louisiana long-arm statute.

Finally, the Court notes again that it has broad discretion in determining whether to dismiss an action for ineffective service of process. *George*, 788 F.2d at 1116. The Court will exercise that discretion here and deny Defendant's *Motion* as far as it seeks dismissal under Federal Rule of Civil Procedure 12(b)(5).

### 3. Personal Jurisdiction

In the case at hand, Defendant argues that the Court lacks personal jurisdiction over it solely because service of process on Defendant was insufficient under the Louisiana long-arm

17

statute. Hence, the personal jurisdiction inquiry turns on whether service of process was properly made.

"Personal jurisdiction over non-residents is fully dependent upon strict compliance with the long-arm statute's procedural requirements." *Folse v. St. Rose Farms, Inc.*, 14-436 (La. App. 5th Cir. 11/25/14), 165 So. 3d 104, 108 (citing *Clay v. Clay*, 389 So. 2d 31 (La. 1979)); *see also McFarland v. Dippel,* 1999-0584 (La. App. 1 Cir. 3/31/00), 756 So. 2d 618, 622, *writ denied*, 2000-1794 (La. 9/29/00), 770 So. 2d 349 ("When service does not comply with § 3204, personal jurisdiction over a non-resident defendant does not attach.") (citation omitted). Thus, "personal jurisdiction over a non-resident obtained by use of the long arm statute may not attach if the service of process falls short of R.S. 13:3204's requirements." *Clay*, 389 So. 2d at 37.

Accordingly, because the Court determined that service of process on Defendant was sufficient in this case, the Court will deny Defendant's *Motion* regarding dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

### 4.   Improper Venue and the Forum-Selection Clause

Defendant originally sought enforcement of the FSC and dismissal pursuant to Federal Rule of Civil Procedure 12(b)(3). (*See* Doc. 2 at 1; *see also* Doc. 2-6 at 7.) Plaintiff countered that should the Court find the FSC to be enforceable, the proper remedy would be transfer and not dismissal. (Doc. 4 at 2.) In its reply brief, Defendant conceded that the proper remedy is transfer. (Doc. 5 at 9 (citing *Boatner v. MXD Grp. Inc.*, No. 16-597, 2017 WL 3977997, at *2 (M.D. La. Sept. 11, 2017) and stating that Plaintiff "correctly notes that transfer is the appropriate relief when, as here, a plaintiff ignores a binding [FSC] and files suit in a different forum.").) The Court agrees.

Federal Rule of Civil Procedure 12(b)(3) is not the proper procedural device to seek dismissal under these facts. Rule 12(b)(3) only permits dismissal when venue is "improper." Fed.

R. Civ. P. 12(b)(3). The United States Supreme Court has instructed that a party may not enforce a FSC by seeking dismissal of the action under Rule 12(b)(3) because "[w]hether venue is . . . 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a [FSC]." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). Instead, whether venue is "improper" is generally governed by 28 U.S.C. § 1391. *Id.* Continuing on this point, the Supreme Court explained:

> When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a). Whether the parties entered into a contract containing a [FSC] has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b). As a result, a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3).

*Atl. Marine*, 571 U.S. at 56.

Although Section 1391 *generally* governs venue, when an action is removed from state court, Section 1441(a) governs the venue inquiry. 28 U.S.C. §§ 1391, 1441(a); *see Polizzi v. Cowles Magazines, Inc*., 345 U.S. 663, 666 (1953); *see also* 14D Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 3806 (4th ed. 2013) ("The general venue statute, Section 1391, does not apply in actions removed to federal court from state court"); *see e.g.*, *E. Roofing Sys., Inc. v. Simon Prop. Grp., Inc.*, 14-717, 2015 WL 679220 (M.D. Pa. Feb. 17, 2015). Accordingly, because this case comes before the Court following removal by Defendant, (Doc. 1), the Court must examine whether venue is proper under 28 U.S.C. § 1441(a).

"Section 1441(a) expressly provides "that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.' " *Polizzi*, 345 U.S. at 666; *see also Hinkley v. Envoy Air, Inc.*, 968 F.3d 544,

551 (5th Cir. 2020) (citing with approval to *Polizzi*). This action was originally filed in the Nineteenth Judicial District Court in East Baton Rouge Parish. (*Petition*, Doc. 1-2.) The Middle District is the district embracing East Baton Rouge Parish. *See* 28 U.S.C. § 98(b) ("The Middle District comprises the parish[] of . . . East Baton Rouge[.] Court for the Middle District shall be held at Baton Rouge."). Accordingly, venue is proper in this Court under 28 U.S.C. § 1441(a).[6]

Because venue is proper in the Middle District, this action may not be dismissed under Federal Rule of Civil Procedure 12(b)(3). *See Atl. Marine*, 571 U.S. at 56. Nevertheless, the Court may still enforce the parties' FSC by transferring this action under 28 U.S.C. § 1404(a). "Although a [FSC] does not render venue in a court 'wrong' or 'improper' within the meaning of . . . Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine*, 571 U.S. at 59. In other words, 28 U.S.C. § 1404(a) "provides a mechanism for enforcement of [FSCs] that point to a particular federal district." *Id.* Moreover, "a proper application of § 1404(a) requires that a [FSC] be 'given controlling weight in all but the most exceptional cases.' " *Id.* at 59–60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (KENNEDY, J., concurring)). And while Defendant has not filed a motion to transfer under 28 U.S.C. § 1404(a) in this case, transfers under 28 U.S.C. § 1404(a) may be made *sua sponte*. *Mills v. Beech Aircraft Corp.,* 886 F.2d 758, 761 (5th Cir. 1989) (citing *Jarvis Christian College v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir. 1988)); *see also Shisinday v. Texas Dep't of Criminal Justice-Agency*, 124 F. App'x. 898, 899 (5th Cir. 2005) (finding that the district court did not abuse its discretion by transferring the case *sua sponte* from the Southern District of Texas to the Eastern District of

---

[6] The Court also notes that even if venue was not governed by 28 U.S.C. § 1441(a), venue would still be proper in this Court under 28 U.S.C. § 1391(b)(2) because the Middle District is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The contract at issue in this case provided for services to be performed in Baton Rouge, Louisiana. (*See e.g.*, Doc. 1-8 at 4 ("Vendor will . . . Provide the necessary staffing personnel to meet all COVID-19 related testing needs *at LSU* [in East Baton Rouge Parish].)" (emphasis added).)

Texas).  For reasons discussed more fully below, the Court will exercise its power *sua sponte* to transfer this case to the Southern District of Texas in accordance with the parties' binding FSC.

"In the typical case not involving a [FSC], a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62. "Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.' " *Id.* at 62–63 (quoting 28 U.S.C. § 1404(a)). "The calculus changes, however, when the parties' contract contains a valid [FSC], which 'represents the parties' agreement as to the most proper forum.' " *Id.* at 63 (quoting *Stewart*, 487 U.S. at 31).

The *Atlantic Marine* Court noted three ways in which a district court must adjust its normal Section 1404(a) analysis when a valid FSC between the parties exists. *Id.* "First, the plaintiff's choice of forum merits no weight."  *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a [FSC] should not consider arguments about the parties' private interests." *Id.* at 64. "Third, when a party bound by a [FSC] flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* at 64–65 (citation omitted); *see also Boatner*, 2017 WL 3977997, at *2. In addition, the *Atlantic Marine* Court stated that "[w]hen the parties have agreed to a *valid* [FSC], a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine*, 571 U.S. at 62 (emphasis added). The parties in this case dispute whether the FSC is valid. Thus, the Court will first analyze the validity of the parties' FSC.

"Federal law applies to determine the enforceability of [FSCs] in both diversity and federal question cases." *Layson v. Baffin Investments*, *Ltd.*, No. 14-518, 2015 WL 5559886, at *4 (M.D. La. Sept. 18, 2015) (Dick, C.J.) (quoting *Alliance Health Group, LLC v. Bridging Health Options, LLC,* 553 F.3d 397, 399 (5th Cir. 2008) (other citations omitted)). "[FSCs] are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.' " *Id.* (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). The party challenging the enforcement of a FSC, here Plaintiff, bears a "heavy burden" of establishing that enforcement of the FSC is unreasonable. *Id.* (quoting *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)). A FSC is potentially unreasonable if:

> (1) the incorporation of the [FSC] into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the [FSC] would contravene a strong public policy of the forum state.

*Haynsworth*, 121 F.3d at 963 (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *M/S Bremen*, 407 U.S. at 12–13, 15, 18).

Plaintiff argues that the second and fourth factors are the pertinent considerations here. (Doc. 4 at 5.) The Court will first address Plaintiff's argument concerning the second factor. Plaintiff provides the Court with no authority supporting its position that enforcing the FSC will "deprive [Plaintiff] of its day in court because of grave inconvenience and unfairness." (*Id.*) Plaintiff argues that the facts giving rise to its claims occurred in Baton Rouge and that all of the witnesses relevant to this dispute are located in Baton Rouge, (*id.*), but those two facts alone are insufficient to meet Plaintiff's heavy burden of establishing that enforcement of the FSC is unreasonable. *See Red Barn Motors, Inc. v. Nextgear Cap., Inc.*, No. 13-778, 2014 WL 4986674,

at *4 (M.D. La. Sept. 29, 2014) (Jackson, J.) ("the inconvenience of trying a case in one state versus another and litigation costs associated with a particular forum, by itself, cannot invalidate a [FSC].") (cleaned up). Thus, Plaintiff's argument concerning the second factor is not enough to meet its heavy burden of establishing that enforcement of the FSC would be unreasonable.

Turning to Plaintiff's argument concerning the fourth factor—that enforcement of the FSC would contravene a strong public policy of the forum state—the Court similarly finds Plaintiff's argument unpersuasive. To support this argument, Plaintiff relies on Louisiana Revised Statutes 23:921(A)(2). However, that statute applies solely to employment contracts. *See* La. R.S. § 23:921(A)(2) ("[t]he provisions of every *employment contract* . . . [that] includes a choice of forum clause . . . shall be null and void") (emphasis added).

The contract at issue here is not an "employment contract" as contemplated by Louisiana Revised Statutes 23:921(A)(2). In *Shelter Mutual Insurance Company*, the Louisiana Supreme Court held that FSCs "are generally enforceable and are not *per se* violative of public policy in Louisiana." *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of Louisiana*, 2013-1977 (La. 7/1/14), 148 So. 3d 871, 878. The contract at issue in *Shelter* was analogous in nature to the one here. In that case, the plaintiff hired the defendant "to provide an engineering evaluation and expert witness services in connection with its defense of litigation resulting from a claim for hurricane damages brought by a corporation insured by" the plaintiff. *Id.* at 872.

Similarly, here, as Plaintiff puts it, "[Defendant] entered into a contract to test for Covid-19 on [LSU]'s campus." (Doc. 4 at 8.) The contract between the parties in this case is a contract for services, not the type of employer-employee contract contemplated by Louisiana Revised Statutes 23:921(A)(2). Thus, the strong public policy espoused in Louisiana Revised Statutes 23:921(A)(2) is inapplicable here. As Plaintiff has not pointed the Court to any other authority

23

supporting its contention that enforcement of the FSC here would contravene a strong public policy of Louisiana, the Court concludes that the fourth factor likewise does not weigh in favor of rendering the FSC invalid. Accordingly, the Court finds that Plaintiff has failed to meet its heavy burden of showing that it would be unreasonable to enforce the FSC contained in the agreement between Plaintiff and Defendant. As a result, the Court finds the FSC to be valid.

Because the FSC is valid, the Section 1404(a) analysis discussed in *Atlantic Marine* will be applied to determine whether transfer under 28 U.S.C. § 1404(a) is appropriate here. As "the party defying the [FSC]," Plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. In sum, the Court finds that Plaintiff has failed to carry this burden.

The only relevant arguments Plaintiff advances concern private interests. (*See* Doc. 4 at 5– 7.) "When parties agree to a [FSC], they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64. Thus, "[a] court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* Moreover, because there is a valid FSC in this case, the Court is only to consider the public-interest factors in its Section 1404(a) analysis.[7] *Id.* at 51. Plaintiff does not provide the Court with any explicitly labeled public-interest factors. Still, even if Plaintiff had done so, "public-interest factors will rarely defeat a transfer motion, [and] the practical result is that [FSCs] should control except in unusual cases." *Id.* Therefore, in accordance with the valid and binding FSC in this case, the Court will exercise its

---

[7] For a description of public-interest considerations, *see Atl. Marine*, 571 U.S. at 62 n.6 ("Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.' ") (citations omitted).

power *sua sponte* to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the Southern District of Texas.[8]

### 5. Dismissal under Rule 12(b)(6)

Given the Court's decision to transfer this case, the Court will forego a determination of whether Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Vacate Preliminary Default and to Dismiss* (Doc. 2) filed by Defendant Baylor Miraca Genetics Laboratories, LLC is **GRANTED IN PART** and **DENIED IN PART**. Specifically, with respect to Defendant's request to vacate the preliminary default judgment entered by the Nineteenth Judicial District Court of East Baton Rouge Parish, the *Motion* is **GRANTED** for being unopposed. With respect to Defendant's request for dismissal for insufficient service of process and lack of personal jurisdiction under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(2), the *Motion* is **DENIED**. With respect to Defendant's request for dismissal based on improper venue under Federal Rule of Civil Procedure 12(b)(3), the *Motion* is **DENIED**. Finally, with respect to Defendant's request for dismissal under Federal Rule of Civil Procedure 12(b)(6), the *Motion* is **DENIED** as moot.

**IT IS FURTHER ORDERED** that:

(a) The preliminary default judgment entered by the Nineteenth Judicial District Court of East Baton Rouge Parish against Defendant is hereby vacated.

---

[8] Defendant correctly notes that venue is proper in the Southern District of Texas because Defendant is the sole defendant in this case and resides in Harris County, Texas. (Doc. 5 at 8.) *See* 28 U.S.C. § 1391(b)(1) (venue is proper "in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"). In addition, the Southern District of Texas encompasses Harris County. 28 U.S.C. § 124(b)(2).

(b) This case is transferred *sua sponte* to the United States District Court for the Southern

District of Texas, Houston Division, pursuant to 28 U.S.C. § 1404(a).

Signed in Baton Rouge, Louisiana, on <u>March 16, 2023</u>.

 

 

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**